IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOUGLAS L. TROUT, SR.** and **VICKIE L. TROUT,** | : CIVIL ACTION NO. 1:07-CV-0431 |
| | : |
| | : (Judge Conner) |
| Plaintiffs | : |
| | : |
| v. | : |
| | : |
| **THE MILTON S. HERSHEY MEDICAL CENTER** and **REZA MIRALIAKBARI, M.D.,** | : |
| | : |
| | : |
| | : |
| Defendants | : |

**MEMORANDUM**

Presently before the court is plaintiffs' Motion in Limine No. 1 (Doc. 57), which seeks to exclude evidence of plaintiffs Douglas and Vickie Trout's claim against the automobile tortfeasor who caused the accident in which Douglas Trout suffered injuries for which defendant medical providers treated him. Plaintiffs further seek to exclude the amount of the settlement and all documents pertaining thereto. For the reasons that follow, the motion will be granted in part and denied in part.

I.  **Factual Background**

On September 24, 2005, plaintiff Douglas Trout ("Trout") was involved in a automobile collision while riding a motorcycle in Adams County, Pennsylvania. He sustained numerous fractures and extensive tissue loss to his right leg, resulting in exposure of his tibia. He was taken to a local hospital before being transferred to defendant Milton S. Hershey Medical Center (hereinafter "the Medical Center").

On October 6, 2005, Trout underwent a procedure place a latissimus dorsi free flap at the site of injury.  This operation involved transferral of a portion of muscle, known as a "flap," from Trout's side to the injured area of his leg in order to encourage tissue growth to cover the exposed bone.  Defendant Dr. Reza Miraliakbari ("Miraliakbari") performed the flap procedure.

During the operation, Miraliakbari mistakenly connected an artery in the flap to a vein in Trout's leg.  Miraliakbari believed that the vein was, in fact, an artery based on its behavior during surgery.  He stated that blood flowed from the vein in a manner consistent with arterial circulation, and instruments designed to ascertain the direction of blood flow indicated that the vessel was an artery.  After surgery, Trout remained hospitalized under the care of staff physicians and nurses employed by the Medical Center.  The transplanted muscle flap survived three days before becoming necrotic, after which it was removed and Miraliakbari's surgical error discovered.  Trout's leg was subsequently amputated below the knee.

Trout and his wife, Vickie, (collectively "the Trouts") advanced an automobile negligence claim against the driver who caused the accident and a medical malpractice claim against defendants.  They subsequently settled and released all claims against the automobile tortfeasor for $1.8 million.  (See Doc. 58, Exs. 2, 5.)  The settlement and release states that the recovery represents solely those injuries Trout sustained as a result of the driver's negligence and provides no compensation for defendants' alleged negligence:

> It is understood and agreed that Claimants may pursue claims against medical providers for injuries resulting from medical treatment rendered to Claimants as a result of the [accident]. It is further expressly understood and agreed that the consideration paid for this Release is not intended to represent full compensation for all injuries sustained by Claimants as a result of the [accident] and the medical treatment rendered to Claimants thereafter. Claimants specifically reserve the right, and nothing contained herein shall be construed to release or otherwise prohibit Claimants from pursuing . . . any claims . . . against . . . Milton S. Hershey Medical Center [and] Reza Mirakabali [sic] . . . *without any diminution by the consideration paid for this release*.

(Doc. 58, Ex. 2 ¶ 1.5 (emphasis added)).

The Trouts' presently seek damages associated with Miraliakbari and the Medical Center's alleged malpractice arising from the failure to obtain Trout's informed consent to the flap procedure, the attachment of the artery to the vein, and the delay in discovering of the incorrectly connected blood vessels. Plaintiffs seek to exclude evidence of their claims against and settlement with the automobile tortfeasor, asserting that the settlement did not compensate the Trouts for their medical malpractice damages and is therefore irrelevant to the pending matter. The parties have fully briefed the motion, which is now ripe for disposition.

## II. Discussion

Plaintiffs contend that the settlement should be excluded because it is irrelevant to the pending malpractice claims. Defendants assert that excluding it creates a risk that plaintiffs will be compensated twice for a single injury. Plaintiffs could have brought suit against the automobile tortfeasor for *both* accident liability and for Trout's medical damages, and the settlement reached with the tortfeasor

could represent recovery for both types of damages. Defendants argue that jurors must be informed of the settlement to enable them to determine whether it has already compensated the Trouts for defendants' alleged negligence. Hence, evidence of the settlement is necessary to prevent double recovery for the harm that followed the flap procedure.

The court will address these issues in two phases. First, the court will evaluate the legal relationship between defendants and the automobile tortfeasors and determine the appropriate mechanism for apportioning liability among them. Second, the court will determine whether evidence of the settlement is relevant to plaintiff's medical malpractice claims.

### A.   **Apportionment of Damages**

In Pennsylvania, an individual who sustains injury in a motor vehicle collision that is aggravated by subsequent medical negligence may recover damages for both injuries either from the driver exclusively or from the driver and the negligent medical practitioner in tandem. See RESTATEMENT (SECOND) TORTS § 457 (1965) [hereinafter "RESTATEMENT"]; Smialek v. Chrysler Motors Corp., 434 A.2d 1253, 1258 (Pa. Super. Ct. 1981) (stating that "the original tortfeasor[ in an automobile collision] is . . . fully responsible . . . for the negligent manner in which a physician or surgeon treats the case"). The plaintiff may recover all damages solely from the negligent driver because subsequent faulty treatment is deemed to be a foreseeable consequence of the automobile accidence. See RESTATEMENT § 457 cmt. a ("[D]amages assessable against [a negligent driver] include not only the

injury originally caused by the [driver's] negligence but also the harm resulting from the manner in which the medical, surgical, or hospital services are rendered"); Boggavarapu v. Ponist, 542 A.2d 516, 517 (Pa. 1988). However, if the plaintiff sues both the driver and the physician, liability should be allocated according to each tortfeasor's separate negligence.[1] See Frazier v. Harley Davidson Motor Co., 109 F.R.D. 293, 295-96 (W.D. Pa. 1985) (stating that negligent motorists and subsequently negligent physicians commit separately identifiable acts of negligent); Smith v. Pulcinella, 656 A.2d 494, 497 (Pa. Super Ct. 1995); Harka v. Nabati, 487

---

[1]Two forms of "apportionment" exist under Pennsylvania law. The first, governed by § 433A of the Restatement (Second) of Torts, applies to assignment of liability to separate tortfeasors. See Glomb ex rel. Salopek v. Glomb, 530 A.2d 1362, 1365 n.2 (Pa. Super. Ct. 1987). Under apportionment rules applicable to separate tortfeasors:

(1) Damages for harm are to be apportioned among two or more causes where
 (a) there are distinct harms, or
 (b) there is a reasonable basis for determining the contribution of each cause to a single harm.
(2) Damages for any other harm cannot be apportioned among two or more causes.

RESTATEMENT § 433A; see also Neal v. Bavarian Motors, Inc., 882 A.2d 1022, 1027 (Pa. Super Ct. 2005) (reiterating that Pennsylvania has adopted the Restatement rules of apportionment). The second form of apportionment, often identified as "equitable apportionment," applies to distribution of proportionate liability among joint tortfeasors. Glomb, 530 A.2d at 1365 n.2. This form of apportionment is set forth in § 886A of the Restatement, which governs assessment of liability and contribution among joint tortfeasors. See id.; see also RESTATEMENT § 879 ("If the tortious conduct of each of two or more persons is a legal cause of harm that cannot be apportioned, each is subject to liability for the entire harm, irrespective of whether their conduct is concurring or consecutive."). It is undisputed that the instant case involves the issue of apportionment of damages among separate, not joint, tortfeasors. (See Doc. 69 at 7-8.)

A.2d 432, 434 (Pa. Super Ct. 1985) (quoting Voyles v. Corwin, 441 A.2d 381, 383 (Pa. Super. Ct. 1982)) ("[T]o the extent that the acts of the original tortfeasor and those of the physician are capable of separation, the damages should be apportioned accordingly."). The court determines as a matter of law whether injuries are capable of apportionment; however, the jury determines the value of the claim against each defendant. Voyles, 441 A.2d at 383.

Pennsylvania courts have concluded that the claims against a negligent driver and a subsequently negligent physician are separable and that damages must be apportioned among the negligent tortfeasors. Lasprogata v. Qualls, 397 A.2d 803 (Pa. Super. Ct. 1979), is the seminal case establishing this principle. In Lasprogata, the plaintiff was injured in an automobile accident and subsequently received faulty medical treatment. Id. at 804. He eventually settled with the driver and brought suit against his physicians. Id. The Pennsylvania Superior Court held: "The acts of the original wrongdoer and the negligent physician are severable as to time, neither having the opportunity to guard against the other acts, and each breaching a different duty owed to the plaintiff. . . . [T]o the extend that the acts of the original tortfeasor and those of the physician are capable of separation, the damages should be apportioned accordingly." Id. at 805-06.

The superior court affirmed the principles of Lasprogata in Voyles v. Corwin. In Voyles, the plaintiff sustained injury to his leg when his motorcycle collided with an automobile. 441 A.2d at 128. Following the injury, he was negligently treated by the defendant physicians, and his leg was eventually amputated. Id. The plaintiff

settled his claim against the negligent driver and filed suit against his treating physicians. Id.  The superior court concluded that the physicians could be held liable for the portion of injury that resulted for their negligence. Id. at 131.  The court opined:

> It may be, as the physicians suggest, that the loss of [the plaintiff's] leg was an unavoidable consequence of the harm [the defendant motorist] did him, no matter what the physicians did or should have done.  Should a jury so find, the physicians would not be liable to [the plaintiff].  It may also be that proper medical care would have resulted in [the plaintiff's] injuries not being so severe.  Should a jury so find, the physicians would be liable to [the plaintiff] for that portion—*but only that portion*—of [the plaintiff's] injuries attributable to their negligence."

Id. (emphasis added).  Pennsylvania state and federal courts have consistently followed Lasprogata and Voyles in the decades since their issuance. See, e.g., FHF Partners v. KMA Fin. Group, No. Civ. A. 05-5309, 2007 WL 710287, at *2 (E.D. Pa. Mar. 5, 2007) (applying Lasprogata to ascertain whether a proposed additional party in a fraud case qualified as a joint tortfeasor); Frazier, 109 F.R.D. at 295-96; Harka, 487 A.2d at 621; Bielanin v. A&H Equip. Co., 1 Pa. D. & C. 4th 156, 160-61 (Ct. Com. Pl. Erie County 1987).

In the instant matter, the collision in which Trout was injured and the surgical flap procedure performed by Miraliakbari occurred twelve days apart.  The negligent driver owed Trout the duty of due care applicable to a motorist; defendants owed Trout the duty of appropriate medical care.  Trout has presented evidence that amputation of his leg might have been avoided had defendants performed the surgery and post-operative care in a non-negligent manner.  (See,

e.g., Doc. 68, Ex. 1 at 7.)  In accordance with the applicable standards set forth in § 433A of the Restatement (Second) of Torts, the court concludes that the injuries Trout sustained as a result of defendants' medical care are separable from those he received as a result of the traffic accident, and the damages for each must be apportioned.

### B. Admissibility of Trout's Claim and Settlement against the Negligent Motorist

To facilitate this apportionment, the court must determine whether and to what extent evidence of the Trouts' claim and settlement against the negligent motorist are relevant at trial.  Evidence is relevant if it renders a material fact either more or less probable than it would have been absent the evidence.  FED. R. EVID. 401, 402.  Settlement agreements, however, are inadmissible regardless of relevance if offered to establish liability for or the amount of a claim or if introduction thereof would result in undue prejudice to an opposing party.  Id. 403, 408(a).  The court will analyze the settlement agreement and claim documents under Rules 401, 403, and 408 to determine their relevancy.

#### 1. Relevance of the Settlement Agreement and Claim Documents

Defendants argue that evidence of the settlement agreement and claim documents is necessary to prevent duplicate recovery.  They allege that the settlement represents a recovery both for Trout's damages caused by the vehicle operator's negligence and the injuries caused by defendants when subsequently treating him.  (See, e.g., Doc. 69 at 15.)  Despite defendants' assertion, the

8

settlement agreement expressly states that it applies only to the claims against the motorist and is not intended to compensate the Trouts for defendants' negligence. (Doc. 58, Ex. 2 ¶ 1.5.)  Hence, the relevance of the instant agreement to defendants' damages depends upon the validity of this provision of the settlement agreement.  If this provision of the agreement is valid, the settlement compensated the Trouts solely for damages resulting from automobile tortfeasor's negligence and is irrelevant to valuation of the claims against defendants.  If the clause is invalid, however, the recovery received under it may represent harm caused both by the motorist and the defendants.

The validity of settlement agreement and claim documents in a diversity case is governed by state law.  See Max Control Sys. v. Indust. Sys., No. Civ. A. 99-2175, 2001 WL 1160760, at *2 (E.D. Pa. July 31, 2001).  Settlement agreements in Pennsylvania are interpreted according to principles of contract law, and a court will give effect to the unambiguous material terms of a settlement agreement to which the contracting parties have manifested assent.  See id.; Commence Bank/Pa. v. First Union Nat. Bank, 911 A.2d 133, 145 (Pa. Super. Ct. 2006) ("If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced.  If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside." (quoting Mazella v. Koken, 739 A.2d 531, 537 (Pa. 1999))).  Pennsylvania courts embrace a strong public policy favoring settlements of disputes, and a settlement agreement may discharge one defendant while

9

permitting the plaintiff to maintain claims against another.  See State Workers' Ins. Fund v. W.C.A.B. (Shaughnessy), 837 A.2d 697, 701 (Pa. Commw. Ct. 2003) ("The law favors the settlement of disputes."); Compu Forms Control, Inc. v. Altus Group, 574 A.2d 618, 624 n.3 (Pa. Super. Ct. 1990).  Hence, "in the absence of fraud and mistake[,] the courts will enforce an agreement to settle a legal dispute." Compu Forms, 574 A.2d at 624 n.3 (quoting Miller v. Clay Twp., 555 A.2d 972, 973 (Pa. Commw. Ct. 1989)).

In the instant matter, the settlement agreement clearly reflects a contractual intent that sums paid under it represent solely damages for the driver's negligence. Defendants have not identified—nor does the record reflect—any fraud, ambiguity, or mistake associated with the language of the settlement agreement.  In light of the contracting parties' manifest intent that the agreement apply only to the claims against the motorist, the court will give effect to the settlement agreement.

Honoring the parties' intent as expressed in the agreement is appropriate in light of the myriad nuances attendant to settlement negotiations.  Parties to an automobile negligence case may agree to settle the matter for a host of reasons unassociated with the actual value of the plaintiff's claims.  Such factors include limits on insurance coverage, the existence of an umbrella insurance policy, the emotional toll of litigation, and the benefit of a prompt monetary settlement. Allowing defendants to introduce the Trouts' settlement agreement would distract a jury from adjudicating and valuing defendants' alleged negligence with a settlement figure potentially driven by a variety of tangential considerations.  This would lead

to juror confusion and cause undue prejudice to plaintiffs' case.  See FED. R. CIV. P. 403.

Prohibiting a jury from considering the settlement agreement and claim documents is also consistent with the apportionment of liability and damages between the automobile tortfeasor and defendants.  "Apportionment" simply means that the two claims are incapable of giving rise to joint liability and must be assessed separately.  Voyles, 441 A.2d at 383.  Hence, the settlement agreement relieves the jury of the task of adjudicating and apprizing the automobile negligence claim because the plaintiffs and the motorist resolved its settlement value.  It has no effect on the severable and distinct malpractice claims, and defendants remain free to dispute their liability and to contest the amount of damages resulting from those claims.  Plaintiffs clearly acknowledge this limitation, stating: "[T]he plaintiff is entitled only to those damages 'apportionable' or to use a synonym, 'attributable' to the proved negligence of the defendant health care providers." (Doc. 73 at 7.)  The jury will hear defendants' evidence and decide what—if any—damages were proximately caused by their negligence.  Exclusion of the settlement will not foreclose defendants from presenting any defense they could have utilized absent the settlement.  **The court will instruct the jury that the claims against the automobile tortfeasor have been resolved and that it must evaluate only the**

**liability and damages that proximately resulted from defendants' actions.**[2]  See

Mavrinac v. Emergency Med. Ass'n of Pittsburgh, No. 04-CV-1880, 2007 WL

4190714, at *2 (W.D. Pa. Nov. 21, 2007) (providing sample limiting instruction

informing jury that it must not consider the potential existence of claims against

defendants who settled before trial).

Exclusion of the settlement agreement and claim documents is consistent

with Pennsylvania's public policy favoring settlement.  To implement this policy,

the Pennsylvania legislature enacted 42 PA. CONS. STAT. § 6141, which states:

"[E]xcept in an action in which final settlement and release has been pleaded as a

complete defense, any settlement . . . [of a personal injury claim] shall not be

admissible in evidence on the trial of any matter."  42 PA. CONS. STAT. § 6141(c); see

also Hatfield v. Cont'l Imports, Inc., 610 A.2d 446, 452 n. 13 (Pa. 1992) (observing

that § 6141(c) prohibits introduction of a settlement agreement reached between the

plaintiff and a joint tortfeasor at the trial of the remaining tortfeasors).  Although

§ 6141 is not binding on a federal district court sitting in diversity, see Chamberlain

---

[2]The court will direct the parties to meet and confer for the purpose of submitting a proposed preliminary instruction and a proposed final instruction. The preliminary instruction shall acknowledge the absence of the automotive tortfeasor from the present matter and inform the jury that the claim against him or her has been resolved.  It shall also inform jurors that the case at bar involves only the alleged negligence of the defendant health care providers, noting that defendants deny all liability.  The final instruction shall expand upon the preliminary instruction and shall incorporate the standard instructions (duty of care, causation, etc.) applicable to medical malpractice cases.  If the parties are unable to agree upon the contents of the instruction, they shall each submit proposed instructions addressing these issues.

v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000), the court must consider Pennsylvania's "strong public policy *favoring* settlements and discouraging litigation." Urmann v. Rockwood Cas. Ins. Co., 905 A.2d 513, 524 n.7 (Pa. Super. Ct. 2006) (citing Darr Constr. Co. v. Workmen's Comp. Appeal Board (Walker), 715 A.2d 1075, 1081 (1998)). In furtherance of this policy, courts should generally implement the terms of a negotiated settlement agreement. The Trouts' agreement manifests a clear intent that sums received under it apply exclusively to the harm plaintiffs sustained as a result of the automobile tortfeasor's negligence. Excluding the agreement and claim documents therefore presents no threat of double recovery because plaintiffs have not yet received compensation for harm proximately caused by defendants' alleged negligence.

Both the settlement contract and the amount paid to the Trouts are therefore irrelevant to the claims against defendants. The amount for which they settled the claims with the automobile tortfeasor has no bearing on the value that the jury assigns to the claims against the defendants. Accordingly, plaintiff's Motion in

Limine No. 1 will be granted to the extent that it seeks to exclude evidence of the settlement agreement and the amount thereof.[3]

## 2. **Admissibility Pursuant to Rules 408 and 403**

Assuming, *arguendo*, that the settlement agreement and claim documents were admissible under Rule 401, it would nevertheless be inadmissible under Rules 408 and 403.  Under Rule 408, settlement agreements are inadmissible when "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount."  FED. R. EVID. 408(a).  A party may offer them "for purposes not [otherwise] prohibited[,]" such as to "prov[e] a witness's bias or prejudice."  Id. 408(b).  Regardless of admissibility under Rule 408, the court may exclude them if their "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Id. 403.

Rule 408 embraces a strong public policy favoring settlement.  Under this policy, federal courts frequently exclude evidence of settlements reached between a plaintiff and a former defendant or between a plaintiff and a non-defendant who is responsible for a portion of plaintiff's damages.  See, e.g., Young v. Verson Allsteel

---

[3]It is unclear whether the motion also seeks to exclude the facts of the accident, such as the location of the collision, design of the road where it occurred, identity of the automobile tortfeasor, sequence of events resulting in Trout's injury, his medical condition after impact, his initial treatment at York Hospital in York, Pennsylvania, and his transfer to the Medical Center.  Certain of these facts are essential to explain the underlying injury and the rationale for the treatment provided to Trout.  The motion in limine will be denied to the extent that it requests the exclusion of such evidence.  At trial, the parties may raise objections to evidence of these events to the extent that it does not elucidate the presentation of Trout's injuries at the Medical Center.

Press Co., 539 F. Supp. 193, 196 (E.D. Pa. 1982) (refusing a defendant's request to admit evidence of the plaintiff's settlement with a co-defendant for the purpose of decreasing the moving defendant's potential liability); see also, e.g., Mavrinac, 2007 WL 4190714, at *1 (stating that Rule 403 "generally precludes the admission of settlement agreements . . . because [their] minimal probative value is outweighed by the danger of unfair prejudice, . . . [which] cannot be cured through a limiting instruction"); St. Paul Fire & Marine Ins. Co. v. Nolen Group, Inc., No. Civ. A. 02-8601, 2007 WL 2571524, at *23-25 (E.D. Pa. Aug. 31, 2007) (concluding that evidence of settlement with former co-defendants was properly excluded, in part due to "the danger that the jury would unfairly attribute liability in excess or *in toto* to the settling defendants"); Sweeten v. Layson's Home Improvements, Inc., No. 1:04-CV-2771, 2007 WL 1189359, at *3 (M.D. Pa. Apr. 19, 2007) (excluding evidence of the plaintiff's prior settlement with third-party defendants because the evidence of the settlement might have inappropriately influenced jurors' determination of the total amount of damages).  For example, in Young v. Verson Allsteel Press, the defendant sought to introduce evidence of the plaintiff's settlement with a joint tortfeasor and co-defendant to inform the jury that the defendant was not the only source of recovery available to the plaintiff. 539 F. Supp. at 195, cited in Sweeten, 2007 WL 1189359, at *3.  The defendant asserted that the settlement was necessary to enable the jury to return a damage award that accurately compensated the plaintiff's harm.  Id.  The court rejected this argument, observing that Rule 408 favored exclusion of the settlement agreement because its introduction would produce

15

undue prejudice to the plaintiff: "It is well established that statements made for purposes of settlement negotiations are inadmissible. And Rule 408 of the Federal Rules of Evidence extends the exclusion to completed compromises when offered against the compromisor." Id. at 196. Hence, the court determined that "the admission of evidence of settlement conflicts with [the comparative negligence scheme applicable to joint tortfeasors and with] . . . the policy underlying [Rule] 408." Id. at 198.

Young provides a ready analogy for the instant matter, in which defendants argue that the settlement should be introduced to prevent plaintiffs from "suing the subsequent treating physician for the same injuries claimed against the original wrongdoer." (Doc. 69 at 15.) The Trouts possess claims against both the automobile tortfeasor and defendants. They have disposed of the claims against the former via a settlement document that has no effect on the medical negligence claims. See (Doc. 58, Ex. 2 ¶ 1.5.); see also supra Part II.B.1. Introduction of the agreement would enable defendants to rely upon a compromise applicable exclusively to the automobile negligence claim for the purpose of reducing liability and damages for the alleged medical malpractice. This would result in the Trouts' compromise being "offered against the compromisor" to disclaim liability for a claim unrelated to the settlement. Young, 539 F. Supp. at 196. Such a result is contrary to the policies underlying Rule 408.

Finally, the settlement agreement and claim documents are properly excluded under Rule 403. A trial court possesses broad discretion to exclude

16

evidence under Rule 403 when the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403; Betterbox Comm'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 330 (3d Cir. 2002). The monetary consideration set forth in the settlement agreement may improperly influence the jury, leading it to conclude that the "remaining defendants should therefore be exonerated." See Young, 539 F. Supp. at 197 n. 10; see also Mavrinac, 2007 WL 4190714, at *1. Admission of the claim documents and insurance information would likely give rise to a host of irrelevant considerations, such as the reasons underlying the automobile tortfeasor's willingness to settle, whether the settlement accurately valued Trout's automobile negligence damages, and nature of the release language set forth in the agreement. The court concludes that admission of the settlement agreement and claim documents would infect these proceedings with collateral issues and that this taint cannot be cured by a limiting instruction. Introduction of the settlement agreement and claim documents therefore conflicts with the policy underlying Rule 408 and that its probative value is substantially outweighed by the danger of unfair prejudice and misleading the jury. The motion in limine will be granted, and the settlement agreement and claim documents will be excluded pursuant to Rules 408 and 403.

### III.  Conclusion

The settlement agreement and claim documents will be excluded under Rule 401 of the Federal Rules of Evidence because the value of the Trouts' motor negligence claim has no effect on their ability to recover damages proximately

caused by defendants' alleged malpractice.  It will also be excluded under Rules 408 and 403 because it would confuse the jury, causing them to value the Trouts' damages for medical malpractice based on the recovery they received for the unrelated automobile negligence claim.  All parties will be permitted to introduce evidence of the facts of the automobile accident to the extent necessary to provide the jury with the factual context from which Trout's injuries arise.

    An appropriate order will issue.

                                              S/ Christopher C. Conner
                                            CHRISTOPHER C. CONNER
                                            United States District Judge

Dated:        August 27, 2008

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOUGLAS L. TROUT, SR.** and **VICKIE L. TROUT**, : <br> : <br> **Plaintiffs** : <br> : <br> v. : <br> : <br> **THE MILTON S. HERSHEY MEDICAL CENTER** and **REZA MIRALIAKBARI**, **M.D.**, : <br> : <br> **Defendants** : | **CIVIL ACTION NO. 1:07-CV-0431** <br><br> **(Judge Conner)** |

## ORDER

AND NOW, this 27th day of August, 2008, upon consideration of plaintiffs' Motion in Limine No. 1 (Doc. 57), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion is GRANTED in part and DENIED in part as follows:

1. The motion is GRANTED insofar as it seeks to exclude evidence of plaintiffs' claim against the vehicle operator, including all evidence pertaining to claim documents, the settlement agreement, and the amount thereof.

2. The motion is DENIED in all other respects, including insofar as it seeks to preclude evidence of the facts of the automotive accident necessary to provide the jury with an understanding of the context from which plaintiff Douglas Trout's injuries arise.

3. The parties shall meet and confer and, on or before September 10, 2008, shall jointly submit proposed preliminary and final instructions that address the following issues:

   a. The preliminary instruction shall acknowledge the absence of the automotive tortfeasor from the present matter and inform the jury that the claim against him or her has been resolved. It shall also inform jurors that the case at bar involves only the alleged negligence of the defendant health care providers and that defendants deny all liability.

   b. The final instruction shall expand upon the contents of the preliminary instruction and shall instruct the jury that plaintiffs may only recovery those damages attributable to defendants' medical negligence. The instruction shall incorporate standard language explaining issues (such as duty of care, causation, etc.) applicable to all medical malpractice cases.

4. If the parties cannot agree on the contents of the instruction required by the preceding paragraph, they shall each submit proposed instructions on or before September 10, 2008.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge