IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOUGLAS L. TROUT, SR.** and **VICKIE L. TROUT,** | : CIVIL ACTION NO. 1:07-CV-0431 |
| Plaintiffs | : (Judge Conner) |
| v. | : |
| **THE MILTON S. HERSHEY MEDICAL CENTER** and **REZA MIRALIAKBARI, M.D.,** | : |
| Defendants | : |

# MEMORANDUM

Presently before the court is plaintiff's motion (Doc. 86) to exclude portions of the deposition of Dr. Robert Brumback ("Dr. Brumback") at trial.[1] Dr. Brumback is a treating physician of plaintiff Douglas Trout ("Trout") who assisted Trout with acquisition and fitting of a prosthetic leg following limb amputation. Dr. Brumback began treating Trout approximately two months following the allegedly negligent surgical procedure performed by defendant Dr. Reza Miraliakbari and the allegedly negligent treatment that Trout received at defendant Milton S. Hershey Medical Center (hereinafter "the Medical Center"). Dr. Brumback played no role in Trout's treatment while he was under the care of defendants.

---

[1] The parties have not stated why they plan to introduce Dr. Brumback's videotaped deposition rather than his in-court testimony. At trial, the parties will be required to demonstrate that its use is appropriate under Rule 32 of the Federal Rules of Civil Procedure and Article VIII of the Federal Rules of Evidence.

Plaintiffs object to portions of Dr. Brumback's deposition pertaining to a patient's treatment and recovery following a limb salvage procedure, to Trout's ability to remodel his townhouse following injury, to Dr. Brumback's opinion regarding the medical qualifications of defendants' expert witness, and to Dr. Brumback's lack of knowledge regarding medical records maintained by the Medical Center.  The court will address these objections *seriatim*.

### A. Testimony Regarding Limb Salvage Treatment

Plaintiffs object to the introduction of Dr. Brumback's cross-examination testimony, during which he compared the general recovery experience of limb salvage patients with that of post-amputation patients.[2]  Plaintiffs assert that it is improper expert testimony because defendants did not qualify Dr. Brumback as required by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and because his testimony does not account for the facts of Trout's injuries and treatment.  They also contend that it exceeds the scope of Dr. Brumback's direct testimony, which consisted exclusively of questions regarding the post-amputation treatment he administered for Trout.  Defendants assert that Dr. Brumback testified based upon his personal knowledge and therefore need not be qualified as an expert witness.  They also assert that his testimony reasonably falls within the scope of direct examination.

---

[2]This testimony appears at 62:18–65:15, 74:16–89:12, and 101:18–102:9 of Dr. Brumback's deposition, attached as Exhibit 1 to the instant motion (Doc. 85).  All deposition testimony will be cited in the [Page]:[Line] format used in the preceding sentence.

As an initial matter, the cross-examination testimony to which plaintiffs object describes the treatment procedures and risks associated with limb salvage and amputation. The testimony is highly specialized and undoubtedly qualifies as expert testimony within the scope of Rule 702 of the Federal Rules of Evidence. See, e.g., Ditch v. Waynesboro Hosp., 917 A.2d 317, 324 (Pa. Super. Ct. 2007) (requiring expert testimony to describe symptoms and treatment of complex medical conditions); Caliendo v. Trump Taj Mahal Assocs., No. , 2007 WL 1038854, at *2 n.1 (D.N.J. Mar. 29, 2007) (reiterating that court will treat physicians testifying about the cause of a particular condition or a prognosis as expert witnesses). The admissibility of expert testimony depends upon whether "(1) the testimony is based upon sufficient facts or data, (2) [whether] the testimony is the product of reliable principles and methods, and (3) [whether] the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702; Perry v. Novartis Pharms., --- F. Supp. 2d ----, 2008 WL 2683047, at *3 (E.D. Pa. July 9, 2008).

Rule 702 requires that an expert witness's statements possess adequate factual support. See FED. R. EVID. 702(1). An expert who testifies primarily from experience must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Suter v. Gen. Acc. Ins. Co. of Am., 424 F. Supp. 2d 781, 788 (D.N.J. 2006) (quoting FED. R. EVID. 702 advisory committee's note, 2000 amends.). In the instant matter, defendants questioned Dr. Brumback about his general expertise in treating amputation and limb salvage patients. This included

3

his experience fighting contamination, preventing infection, preforming bone grafts, and aiding patients in regaining use of limbs. However, Dr. Brumback did not describe whether this experience affected the manner in which he outfitted Trout with a prosthetic limb or whether it was relevant to Trout's case in any way. He did not delineate the risks associated with Trout's post-amputation treatment or clarify how those risks would have varied had he elected limb salvage. Rather, defendants questioned Dr. Brumback about a variety of abstract medical risks without establishing whether Trout's amputation rendered him susceptible to these risks or whether he would have been susceptible to them had he elected undergo a limb salvage procedure. Without this direct link to Trout's case, Dr. Brumback's cross-examination testimony threatens to lead the jury into a thicket of medical issues whose relevancy to the instant matter has not been established. Hence, defendants' cross-examination of Dr. Brumback lacks the factual basis necessary to satisfy Rule 702.

Rule 702 also requires that expert testimony derive from reliable methods and "fit" the facts of the case in dispute, reflecting the facts in a manner that is helpful to the jury. FED. R. EVID. 702(2)-(3); see In re Paoli RR Yard PCB Litig., 35 F.3d 717, 742-43 (3d Cir. 1994) (stating that an expert's scientific knowledge may be excluded "if it is not scientific knowledge *for purposes of the case*"); Allstate Ins. Co. v. Hamilton Beach/Proctor-Silex, Inc., No. 2:06cv1186, 2008 WL 3891259, at *4 (W.D. Pa. Aug. 19, 2008) (stating that expert testimony must aid the jury in resolving disputed issues). Generalized expert testimony that is factually disconnected from

4

the case is inadmissible because it does not assist the jury in rendering a verdict based on the material facts in issue.  See Elcock v. Kmart Corp., 233 F.3d 734, 755 n.12 (3d Cir. 2000) (stating that expert testimony may be excluded if it is based upon unfounded assumption or is otherwise "not grounded in the facts of a case"); Mercedes-Benz, U.S.A. LLC v. Coast Auto. Group, No. Civ. A. 99-3121, 2006 WL 2830962, at *12 (D.N.J. Sept. 26, 2006) (quoting Elcock, 233 F.3d at 755) (describing expert testimony offered without an adequate factual basis as "a castle made of sand").

In the instant matter, defense counsel questioned Dr. Brumback about the general recovery of individuals who sustain severe leg injuries and opt for limb salvage rather than amputation.  Dr. Brumback did not testify about Trout's condition, and he explained that his testimony does not accurately reflects Trout's particular medical issues.  Dr. Brumback repeatedly testified that prognosis, risk, and recovery experience are dependent upon each patient's injury and that general principles cannot describe an individual patient's likely experience:

> Q.   Dr. Brumback, based on, on your experience, you wouldn't anticipate that somebody who underwent attempted salvage of their leg would be able to bear their full weight on that leg just a little over two months after having undergone the salvage procedure?
>
> * * *
>
> A.   *It's, it's entirely possible that that's true.  It's also very likely that it's not true.  You can't generalize like this.*  There are certain fractures that be fixed [sic] with certain devices that allow weight bearing in two months, and there are certain fractures that, with other certain devices that you can't, so *I just can't generalize.*

\* \* \*

Q. . . . [B]ased on your experience in treating . . . injuries that Mr. Trout had, grade 3B open tibial fractures[,] . . . you wouldn't anticipate that somebody like that who underwent attempted salvage of their leg would be able to bear full weigh on that leg just two months after undergoing their salvage procedure, would you?

\* \* \*

A. It would be unlikely, but depending upon the device use[d] and depending upon the individual fractures, it's not unheard of. So *it's a very individualized thing. It can't be generalized.*

\* \* \*

Q. Were you basing any of th[e]se opinions specifically on your review of materials from Mr. Trout's treatment at York Hospital or Hershey Hospital in your review of his particular case, or were you giving generalizations as to that general area of medicine?

6

>     A.   *They were absolutely generalizations* about the general issue of trauma to a limb.[3]

(Doc. 85, Ex. A at 62:18–65:15; 102:1-9 (emphases added)). Clearly, prognosis, risk, and recovery must be assessed on a case-by-case basis, and Dr. Brumback's generalizations are not representative of Trout's condition. He has not applied his opinions to the facts of this case. His cross-examination testimony would be unhelpful to the jury because it invites jurors to compare his generalized opinions with the facts of Trout's case, a comparison against which Dr. Brumback has expressly cautioned. Therefore, the testimony has not been reliably applied to Trout's case, does not fit the instant facts, and will be excluded under Rule 702.

---

[3]Dr. Brumback further reiterated the general nature of his testimony at the close of his deposition:

> Q.   It is, is it fair that you did not intend . . . [that testimony comparing limb salvage with amputation] be particularized as applying to Douglas Trout?
>
> \* \* \*
>
> A.   It—you are correct. It is not my intent. I thought my answers were given in generalizations about the topics that we were discussing. I was not applying them specifically to Mr. Trout one way or the other.
> Q.   Okay. Now, Doctor, would you be agreeable in this case . . . that [your testimony] be construed as support for the proposition that Mr. Trout is better off with an amputation?
>
> \* \* \*
>
> A.   I have made no statements specifically about Mr. Trout that he was better off with either amputation or limb salvage. I have made no such statement, and if anyone has heard such, they have misunderstood me.

(Doc. 85, Ex. 1 at 103:6–104:2.)

Alternatively, the testimony is properly excluded as beyond the scope of direct examination. Rule 611(b) requires that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." FED. R. EVID. 611(b). The trial court possesses discretion to limit the scope of cross examination to ensure that it reflects issues raised on direct. Douglas v. Owens, 50 F.3d 1226, 1230 (3d Cir. 1995) ("[T]he district court may properly exercise its discretion in this area by imposing reasonable limits on the scope of cross-examination, weighing such factors as undue prejudice, relevancy, and delay due to repetition."); Williams v. Giant Eagle Markets, Inc., 883 F.2d 1184, 1189 (3d Cir. 1989). In the present case, the only testimony elicited on direct examination comparing amputation with limb salvage concerned Trout's attitude during recovery:

> Q.  Okay. You talked before about for a patient to be, have a good attitude, a positive attitude and a cooperative relationship with his physicians is an important factor in recovery and learning to use a prosthesis and learning to do well on a prosthesis; is that correct?
> A.  It is. I think that's true for recovery of any injury really.
> Q.  And is that also true in your knowledge, training and experience for a patient who has had a, a flap procedure, a, a salvage procedure of his lower extremity?
> A.  Yes. That's true. As I said, I think it's true for recovery from injury.
> Q.  Okay. Now, do you have any reason to believe that Mr. Trout would have had any sort of a different attitude, a different positive attitude had he been a post-salvage patient as opposed to a post-amputation patient?
> A.  I have, I have no belief that he would be that. I think that his attitude would be the same as I saw.

(Doc. 85, Ex. 1 at 32:2–33:2.) This testimony exclusively concerns Trout's attitude during recovery and does not probe the risks associated with amputation or limb

8

salvage. Defendant's detailed questioning of Dr. Brumback about limb salvage procedures, wound debridement, infection control, bone grafting, and recovery risks far exceeds the scope of this limited direct examination. Moreover, excluding the testimony will have no adverse effect on defendants' case because they may introduce similar evidence through other, properly qualified expert witnesses. The cross-examination testimony elicited from Dr. Brumback will therefore be excluded because it is beyond the scope of the direct examination.

The testimony is likewise inadmissible under Rule 401. Under Rule 401, evidence is admissible if it is likely to render a material fact either more or less probable than the fact would have been without the evidence. See FED. R. EVID. 401; Sweeten v. Layson's Home Improvements, Inc., No. 1:04-CV-2771, 2007 WL 1189363, at *1 (M.D. Pa. Apr. 19, 2007). Here, Dr. Brumback's cross-examination testimony does not compare the side effects that Trout likely would have experienced from a limb salvage procedure with those he actually underwent as a post-amputee. In fact, Dr. Brumback clarified that his testimony could not be used to draw medically sound conclusions without considering the particular facts of Trout's injury. Without this particularity, Dr. Brumback's testimony is simply an exposé about limb salvage that does not provide the jury with probative information about the risks or prognosis that Trout likely would have encountered had he elected to pursue such treatment. Rule 401 therefore bars its admission.

Finally, the testimony is inadmissible under Rule 403, which precludes evidence whose probative value "is substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury." FED. R. EVID. 403; United States v. Univ. Rehab. Servs. (PA), Inc., 205 F.3d 657, 664 (3d Cir. 2000). If introduced, Dr. Brumback's cross-examination testimony would threaten to confuse and mislead the jury by causing them to apply general information about amputation and limb salvage to Trout's case without a sufficient medical basis for doing so. The testimony could lead jurors to draw medically unsound conclusions or to question unwarrantedly other expert testimony tied more closely to the material facts of the case. After balancing, the court finds that these dangers substantially outweigh the *de minimis* probative value of Dr. Brumback's cross-examination testimony. Accordingly, the evidence will be excluded pursuant to Rules 702, 611(b), 401, and 403.[4]

### B.   Trout's Remodeling of His Townhouse

Plaintiffs next seek to exclude Dr. Brumback's cross-examination testimony about Trout's ability to perform renovations to his townhouse six months after his motorcycle injury. Dr. Brumback's deposition contains inadequate foundation that Trout did, in fact, remodel his home. However, a foundation could be developed through the testimony of other trial witnesses. The court will defer ruling on the

---

[4]Defendants suggest that Dr. Brumback testified exclusively from his personal knowledge and that his testimony therefore need not comply with the strictures of Rule 702 and Daubert. (See Doc. 90 at 14-19.) Assuming, *arguendo*, that Dr. Brumback's observations regarding limb salvage constitute lay witness testimony, it must nevertheless be excluded by virtue of the court's conclusions regarding relevance, undue prejudice, and the scope of cross-examination. See supra Part A; see also FED. R. EVID. 401, 403, 611(b).

10

objection until trial, when it can evaluate the foundation for this questioning in light of all evidence presented.  Plaintiff's counsel will be instructed to renew the objection at the time Dr. Brumback's deposition is presented to the jury.  All counsel will be instructed to refrain from mentioning Dr. Brumback's testimony on this issue pending the court's ruling on plaintiff's objection.

### C. Dr. Brumback's Assessment of the Expertise of Defendants' Expert

Plaintiffs next seek to exclude statements regarding Dr. Brumback's favorable assessment of the professional acumen of Dr. Michael Bosse ("Dr. Bosse"), who is one of defendants' expert witnesses.[5]  Dr. Brumback's testimony regarding Dr. Bosse's medical ability is entirely unrelated to any matter raised on direct examination, which primarily concerns the prosthesis that he prescribed for Trout.  Hence, the cross-examination is beyond the scope of direct and inadmissible under Rule 611(b).  See Douglas, 50 F.3d at 1230; see also Williams v. Gov't of V.I., 271 F. Supp. 2d 696, 707 (D.V.I. 2003) ("A trial court may impose reasonable limits on cross-examination in consideration of the needs of the case . . . .").

Further, the testimony is immaterial to any fact in issue.  Dr. Brumback's favorable opinion of Dr. Bosse has no bearing on Trout's alleged injuries, the effects thereof, or alternate courses of treatment that were available to him.  The only issue of which it may be probative is Dr. Bosse's qualification to testify as an expert witness.  However, expert qualification is a matter exclusively within the province

---

[5] This testimony appears at 94:15–96:6.

of the court and must be assessed before permitting an expert witness to take the stand. Perry, 564 F. Supp. 2d at *3; Amico v. Duracal Cement, No. Civ. A. 04-4924, 2006 WL 2319313, at *3 (D.N.J. Aug. 9, 2006) (recounting that the trial court must act as gatekeeper to ensure that unqualified or unreliable experts are not permitted to testify); see also Allstate Prop. & Cas. Ins. Co. v. Vargas, No. 2:06-CV-3368, 2004 WL 4104542, at *5 (E.D. Pa. Aug. 29, 2008) (same). The jury plays no role in this process, and Dr. Brumback's testimony is therefore irrelevant to its disposition of the factual issues of this case. The testimony will be excluded under Rule 401.

It is likewise inadmissible because any probative value that it possesses is substantially outweighed by its potential to mislead and confuse the jury. See Soldo v. Sandoz Pharms. Corp., 244 F. Supp. 2d 434, 536 (W.D. Pa. 2003). The testimony would likely cause jurors to defer to Dr. Brumback's opinion of Dr. Bosse without independently evaluating the latter's credibility. This tenuous endorsement of Dr. Bosse's credentials should not cloud the jury's independent deliberations about his credibility. Hence, the probative value of Dr. Brumback's testimony is substantially outweighed by the risk that jurors will be confused and misled by his opinion and prevented from impartially assessing the testimony of Dr. Bosse. Id.; Henry v. Hess Oil V.I. Corp., 163 F.R.D. 237, 246 (D.V.I. 1995) (citing Daubert, 509 U.S. at 595) ("Because expert evidence is often more misleading than other evidence, . . . Rule 403 gives judges more power over experts than over lay witnesses."). Accordingly, the cross-examination of Dr. Brumback will be excluded pursuant to Rule 403.

**D.    Dr. Brumback's Lack of Knowledge about Trout's Treatment at the Medical Center**

Lastly, plaintiffs seek to exclude testimony in which Dr. Brumback states that he did not review Trout's records from the Medical Center prior to his deposition.[6]  These questions reasonably illuminate Dr. Brumback's familiarity with the course of Trout's medical treatment.  They also confirm that Trout became Dr. Brumback's patient following treatment at the Medical Center and that the treatment Trout received from defendants is unrelated to that administered by Dr. Brumback.  Questions regarding Dr. Brumback's familiarity with Trout's Medical Center records are therefore relevant to the treatment he administered and will be admitted.[7]

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:       September 17, 2008

---

[6] This testimony appears at 101:4–17.

[7] Plaintiffs have counter-designated the testimony appearing at 102:10–104:2 and seek to admit this testimony in the event that the court admits the testimony appearing at 101:4–102:9.  This counter-designated portion addresses the generalized nature of Dr. Brumback's testimony about limb salvage, which the parties briefly discussed at 101:18–102:9.  In light of the exclusion of Dr. Brumback's testimony regarding limb salvage, see supra Part A, plaintiff's counter-designated testimony will likewise be precluded.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOUGLAS L. TROUT, SR.** and **VICKIE L. TROUT**, | : | CIVIL ACTION NO. 1:07-CV-0431 |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | |
| **THE MILTON S. HERSHEY MEDICAL CENTER** and **REZA MIRALIAKBARI**, **M.D.**, | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 17th day of September, 2008, upon consideration of plaintiffs' motion (Doc. 86) to exclude portions of the deposition of Dr. Robert Brumback ("Dr. Brumback"), it is hereby ORDERED that the motion (Doc. 86) is GRANTED in part, DENIED in part, and DEFERRED in part as follows:

1. The motion is GRANTED with respect to those portions of Dr. Brumback's deposition appearing at 62:18–65:15, 74:16–89:12, 94:15–96:6, and 101:18–102:9.  Plaintiffs' counter-designated testimony appearing at 102:10–104:2 shall likewise be excluded.

2. The motion is DENIED with respect to those portions of Dr. Brumback's deposition appearing at 101:4-17.

3. The motion is DEFERRED until trial with respect to those portions of Dr. Brumback's deposition appearing at 69:14–70:3.  Plaintiff's counsel shall renew this objection at the time Dr. Brumback's testimony is presented to the jury.  In the absence of renewal, the objection shall be deemed withdrawn.  All counsel are instructed to refrain from

mentioning Dr. Brumback's testimony regarding plaintiff Douglas Trout's ability to remodel his townhouse prior to the introduction of Dr. Brumback's deposition.

                                         S/ Christopher C. Conner
                                         CHRISTOPHER C. CONNER
                                         United States District Judge